

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

*Hecules Building*　　　　　　　　　　　　　*(302) 573-6277*
*1313 N. Market St., Suite 400*　　　　　　　*FAX (302) 573-6220*
*P.O. Box 2046*
*Wilmington, Delaware 19899-2046*

January 6, 2020

The Honorable Leonard P. Stark
Chief United States District Judge
District of Delaware
844 King Street
Wilmington, DE 19801

      Re:    **United States v. Abdoulaye Diallo**
              <u>**Criminal Action No. 18-7-1 (LPS)**</u>

Dear Chief Judge Stark:

      Please accept this letter as the government's sentencing memorandum in this case. The government requests a sentence of 84 months of incarceration, which represents a variance below the applicable sentencing guideline range.[1] The defendant was a mid-level heroin dealer who sold fentanyl that killed a young man named Joel Davis. His crime was very serious and warrants a substantial sentence of incarceration. However, his current guideline range of 110-137 months is greater than necessary in light of the defendant's history and characteristics and the need to avoid unwarranted sentencing disparities.

### A.  The Defendant's Conduct was Dangerous and Warrants a Lengthy Sentence

      The defendant engaged in very dangerous conduct for no apparent reason other than – to quote him – "greed." Presentence Investigation Report ("PSR") at ¶ 34. His greed killed someone. In 2017, when the defendant was selling heroin, about one person a day died in Delaware of suspected drug overdoses. Most of those deaths involved the use of fentanyl. Fentanyl-laced heroin is a full-blown public health emergency in our state. Often, it is not possible to determine who sold a victim the fatal dose. Here, law enforcement was able to trace the fatal dose of fentanyl back to the defendant, his supplier in Wilmington, and up the chain to the source of supply in Philadelphia.

      The defendant was an important, mid-level participant in the drug organization that caused the fentanyl death of Joel Davis. On February 16, 2017, the defendant sold a substance that looked

---

[1] As it does in every case, the government is filing a sealed attachment A to this Sentencing Memorandum.

like heroin to Robert Owens and Michael Wilson, who then shared four baggies of the drugs with Joel Davis.  The baggies turned out to be fentanyl rather than heroin, and when Mr. Davis used the drugs, he died.

His death forever changed the lives of Mr. Davis's father and sisters – who were all still grieving the loss of their mother.  Mr. Davis's father died several months later, further exacerbating the tragedy his sisters were left to deal with.  According to his sisters, Mr. Davis was an adventurer – a free spirit.  He went through periods of trauma and addiction, but he maintained his sense of humor and his relationships.  He was a source of joy to his family and loved ones.

The defendant also has a supportive and loving family.  He squandered that family support and took his life down a very dangerous path.  His criminal history tells the tale of someone who has escalated his drug dealing over time.  When he was 19, he was caught with a sawed-off shotgun during a traffic stop, which he said he had for protection.  PSR at ¶¶ 47-48.  At 20, he was dealing marijuana; he was arrested in possession of about an ounce of marijuana, packaging materials, hundreds of dollars in cash, and digital scales.  Id. at ¶¶ 50-52.  Just three months after that arrest, he was arrested in Pennsylvania and was the passenger in a car containing similar items.  Id. at ¶¶ 58-60.  He did not do well on probation for those offenses – he continually tested positive for marijuana, violated the terms of his home confinement, or travelled out of state without permission.  Id. at ¶¶ 53-57, 61.  He also became a heroin dealer while he was on probation.

It appears that felony convictions and probation terms – without prison sentences – do not deter the defendant.  Indeed, even after his arrest in this case, he asked his girlfriend to smuggle a small amount of suboxone into the Federal Detention Center in Philadelphia; she was prosecuted for that offense.  PSR at ¶¶ 84, 96.  The defendant cannot argue, as some defendants do, that his federal arrest and pretrial detention successfully taught him that he must keep drugs out of his life.

A lengthy term of incarceration is needed to deter the defendant, to provide just punishment for his very serious offense and its devastating consequences, and to protect the public.  However, the government does not request a guideline sentence, for the reasons that follow.

### B. A Sentence Within the Guideline Range is Longer than Necessary to Achieve the Goals of Sentencing

A number of sentencing factors point towards a substantial sentence of incarceration.  However, a sentence within the guideline range of 110-137 months is higher than needed in this case for several reasons.

First, the defendant's history and characteristics do not support a 110-137 month prison sentence.  Although the defendant has a history of drug dealing – indeed, his history renders him a Career Offender – none of his prior convictions resulted in more than a few days in jail.  None of his prior arrests involved any drugs other than marijuana.  A sentence within the guideline range would treat him similarly to other Career Offender defendants who have much more serious prior histories.  It is more appropriate to conceptualize the defendant as if he were a Criminal History category IV rather than a VI, which would lead to a guideline range of 84-105 months.

Second, a 110-137 month range sentence would create an unwarranted sentencing disparity. The defendant's supplier, James Briggs, was sentenced to 120 months of incarceration.   PSR at ¶ 24. He was selling approximately twenty times the volume of heroin that this defendant was selling, and he also possessed a handgun.   Another defendant who was similarly-situated to this defendant, Antwine Carey, Criminal Action Number 19-33 (RGA), received a sentence of 60 months of incarceration.   He was a five-log-per-week heroin dealer who caused a death.   His criminal history was older and less substantial than this defendant's (he was not a Career Offender), and he did not commit any new crimes after his arrest.   While the defendant should receive a lengthier sentence than Mr. Carey, a 110-137 month sentence would have the potential to create an unwarranted disparity.

### C. Conclusion

The government's requested sentence of 84 months incarceration serves the goals of sentencing.   It would send a message to the defendant and to others that providing drugs that kill someone will result in prison time.   But it would also be consistent with the defendant's role in Mr. Davis's death and would reflect his history and characteristics.

Respectfully submitted,

DAVID C. WEISS
United States Attorney

BY:   /s/ Jennifer K. Welsh
Jennifer K. Welsh
Assistant United States Attorney