## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **Docket No.: 1:18CR000007-001 (LPS)** |
| | **:** | |
| **ABDOULAYE DIALLO** | **:** | |
| | **:** | |

# <u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Respectfully submitted,

BY:  _____

EUGENE P. TINARI, ESQUIRE
Attorney for Defendant
Attorney Identification No.: 054512
1 Veterans Sq., Suite 106
Media, PA 19063
T: 215-569-2551/F: 215-405-2561

INDEX TO DEFENDANT'S SENTENCING MEMORANDUM
AND SUPPORTING DOCUMENTS

A.  OFFENSES AND PENALTIES

B.  STATEMENT OF LAW: SENTENCING CONSIDERATIONS

C.  IMPOSITION OF SENTENCE PURSUANT TO 18 U.S.C. § 3553 (A):
    FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE
    AND REASONS FOR DOWNWARD VARIANCE AND/OR DOWNWARD
    DEPARTURE

D.  CHARACTER LETTERS

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Docket No.: 1:18CR000007-001 (LPS)** |
| | : | |
| **ABDOULAYE DIALLO** | : | |
| | : | |

### A.        OFFENSES AND PENALTIES

**<u>Count 1</u>**

Count One: Distribution of a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  The maximum penalties are 20 years of imprisonment, at least three years and up to a lifetime of supervised release, a $1,000,000 fine and a $100 special assessment. [Class C Felony]

## B.  STATEMENT OF THE LAW: SENTENCING CONSIDERATIONS
## PROCEDURE OF THE SENTENCING COURT

### a)  *United States v. Booker*

Following the Supreme Court's decision *in United States v. Booker,* 543 U.S. 220 (2005), sentencing courts should engage in a three-step approach to federal sentencing.

First, the court should apply the sentencing guidelines to establish the sentencing guideline range. *Gall v. United States,* 552 U.S. 38 (2007) (stating that the district court should begin all sentencing proceedings by correctly calculating the applicable guideline range, and that "to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark").

Second, the court should determine whether a departure is consistent with the guidelines. See, e.g., *United States v. McBride,* 434 F.3d 470 (6th Cir. 2006) (holding that guideline departures are still a relevant consideration for determining the appropriate guideline sentence); *United States v. Jordi,* 418 F.3d 1212 (IIth Cir. 2005) (stating that "the application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered"); see also *United States v. Lofink,* 564 F.3d 232 (3d Cir. 2009) (holding that a district court's failure to rule on the defendant's departure arguments constitutes procedural error). But see *United States v. Johnson,* 427 F.3d 423 (7th Cir. 2005) (stating that the defendant's "framing of the issue as one about 'departures' has been rendered obsolete by our recent decisions applying Booker," and holding that "[i]t is now clear that after Booker what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-Booker decisions that cabined the discretion of sentencing courts to depart from guidelines that

were then mandatory".); *United States v. Mohammed,* 459 F.3d 979 (9th Cir. 2006) (holding that, in light of *Booker,* it would "treat such so-called departures as an exercise of *post-Booker* discretion to sentence a defendant outside of the applicable guidelines range" and subject it to a "unitary review for reasonableness, no matter how the district court styles its sentencing decision"); see also *United States v. Brown,* 578 F.3d 221 (3d Cir. 2006) (vacating and remanding where district court failed to distinguish whether above guideline sentence was product of a departure or a variance); *United States v. Miller,* 479 F.3d 984 (8th Cir. 2007) (holding that conflating departure considerations and the variance analysis can be harmless error where the ultimate sentence is not unreasonable).

Third, the court should determine whether a variance (a sentence outside the advisory guideline system) is warranted under the authority of 18 U.S.C. § 3553(a).

### a.  GENERAL PRINCIPAL

A court may impose a sentence outside the properly calculated sentencing guideline range through either a departure or a variance.

A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a prosecution request to reward cooperation ... or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in I 8 U.S.C. § 3553(a).1.

A "variance" outside the guideline range provided for in the Guidelines Manual should occur after consideration of all relevant departure provisions. Courts have held that variances are

not subject to the guideline analysis for departures. In some situations, a prohibited ground for departure may be a valid basis for a variance. Variances are not subject to notice requirements applicable to departures. A court may grant a departure and a variance in the same sentence (e.g., a departure for substantial assistance and a variance for the defendant's history and characteristics).

### b) The impact of the Supreme Court's Decision in Gall v. United States

In light of the United States Supreme Court's decision in *Gall v. United States,* 128 S.Ct. 586,552 U.S (2007), *Gall* reinforces the district court's broad discretion in selecting a sentence outside the Guidelines range, whether by applying traditional Guidelines departure or by granting a variance under 18 U.S.C. §3553 (a). *Gall* forbids an appellate court from substituting its own judgment for that of the district judge, so long as the district judge explains his sentence with reasons supported by the record and tied to the considerations of §3553(a).

1.   The *Gall* Case

In *Gall,* the district court sentenced Brian Gall, a participant in an ecstasy distribution conspiracy, to a term of probation for thirty-six months. This was a downward variance from a Guideline range of thirty to thirty-seven months imprisonment. *Id* at 591. Gall had withdrawn from the conspiracy a few months after he had joined it, ceased selling or using illegal drugs of any kind, graduated from college, started a career, and otherwise lived a reputable life for years preceding his sentence. *Id.* The sentencing court received a "flood" of letters in support of Gall from members of the community. *Id* at 593.

Applying the factors thus enumerated in §3553(a), the district judge determined that a sentence of probation was "Sufficient, but not greater than necessary to serve the purposes of sentencing." *Id.* This decision was made in light of Gall's post-offense conduct, the support

offered by his family and friends, his lack of any criminal history, and his youthful age at the time of the offense conduct. *Id.* The district judge further justified said sentence in that a sentence of probation would reflect the seriousness of Gall's offense, while a prison term would deprive society of Gall's contributions despite evidence that Gall understood the consequences of his criminal conduct, posed little risk of recidivism, and would not be a danger to society. *Id.*

The Circuit Court reversed and remanded, holding that the variance granted to Gall was so substantial that it needed to be supported by extraordinary circumstances. *Id* at 594. In a 7-2 decision the Supreme Court reversed. The Court rejected the Eighth circuit's rule that a so-called "extraordinary" variance from the Guidelines must be justified by "extraordinary" circumstances. *Id* at 595. The Court also discredited the Eighth Circuit's rule that *any* non-prison sentence amounts to a "100% departure" from a Guidelines sentence, because that approach "gives no weight to the 'substantial restriction of freedom' involved in a term of supervised release or probation." *Id.* at 595-596. As such, *Gall* did not alter, but in fact reiterate the process a sentencing judge must follow in the *post-Booker* era. The judge must begin by correctly calculating the applicable Guideline range, then hears argument from the parties as to the sentence they deem appropriate and proceeds to consider all of the §3553(a) factors. *Id.* at 596. A judge is *not* to presume that the Guidelines range is reasonable but must make an "individualized assessment based on the facts presented." *Id.* at 597. In order to allow for meaningful review, the judge must adequately explain the chosen sentence. *Id.*

The *Gall* Court subsequently addressed the Circuit's review of the District Judge's §3553(a) analysis, concluding:

> The court of appeals gave virtually no deference to the District Court's decision that the §3553(a) factors justified a significant variance in this case, Although the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion,

it engaged in an analysis that more closely resembled de novo review of facts presented and determined that, in its view, the degree of variance was not warranted.

*Id.* At 600. The Supreme Court held that the district judge properly considered the relevant factors in Gall's case, consisting of Gall's age, his early withdrawal from the conspiracy, and his efforts to rehabilitate himself as supporting a variance under several §3553 (a) factors. *Id.* At 600-01. The Eighth Circuit's view that the district judge did not give enough weight to the "seriousness of the offense," and the need to avoid unwarranted sentencing disparities, was belied by the record. *Id.* at 599.

As such, *Gall* re-emphasized that appellate courts have a limited role in reviewing criminal sentences. While the aforementioned Circuit Court clearly disagreed with the district judge's §3553 (a) analysis and his ultimate sentence, the Supreme Court underscored that "it is not for the Court of Appeals to decide *de nova* whether the justification for a variance is sufficient or the sentence reasonable." *Id.* at 601-02. Instead, a Court of Appeals must defer to a district judge's, "reasoned and reasonable decision that the §3553 (a) factors, on the whole, justify the sentence."

11.     Applying *Gall*

*Gall* requires a more deferential standard than *pre-Gall* findings under U.S.S.G §5Hl.4 as they relate to non-Guideline sentences. It thus permits lower Courts to set any reasonable sentence as long as they explain their reasoning.

In <u>Pepper v. United States</u>, --- S. Ct.---, 2011 WL 709543 (March 2, 2011), the Supreme Court again emphasized that the guiding principle of federal sentencing is that "the punishment should fit the offender and not merely the crime".

It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in

the human failings that sometimes mitigate, sometimes magnify, the cnme and punishment to ensue.

--- S. Ct. ---, 2011 WL 709543 at *8 (quoting Koon v. United States, 518 U.S. 81, 113 (1996); Williams v. New York,-337 U.S. 241,247 (1949)) (other internal quotation marks and citations omitted). Sentencing Courts consequently must "consider the widest possible breadth of information about a defendant" to ensure "that the punishment will not suit merely the offense but the individual defendant." Id. (quoting Wassman v. United States, 468 U.S. 559,564 (1984)). See also, 18 U.S.C. §3661 (providing that "no limitation shall be placed on the information concerning the background, character, and conduct" of a defendant which may be considered "for the purpose of imposing an appropriate sentence.").

　　To accomplish this aim, the Court must follow the steps prescribed by the Third Circuit in United States v. Merced, 603 F.3d 203 (3d Cir. 2010):

(I)　　[C]orrectly calculate the defendant's Guideline range[;]

(2)　　[R]ule on any motions for departures[; and].

(3)　　After giving both parties an opportunity argue for whatever sentence they deem appropriate, ... exercise[ ] its discretion through meaningful consideration to the §3553(a) factors before deciding on a sentence. [1]

Merced, 603 F.3d at 215 (internal citations and quotation marks omitted) (paragraphing altered) (quoting United States v. Gunter, 462 F.3d 237,247 (3d Cir. 2006); Gall v. United States, 552 U.S. 38, 49 (2007); and, United States v. Cooper, 437 F.3D 324, 329 (3d Cir. 2006)). In arriving

---

[1] The sentencing factors set forth in §3553(a) include:(!) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentence available; (3) the Guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range; (4) the need to avoid unwarranted sentencing disparity; and, (5) the need to provide restitution where applicable. 18 U.S.C. §3553(a)(l), (a)(3), (a)(5)-(7).

at an ultimate sentence, the sentencing Court may not treat a Guidelines sentence as inherently superior to, or more reasonable than, a non-Guidelines sentence. See Nelson v. United States, --- U.S.---, 129 S. Ct. 890, 891 (2009) ("The Guidelines are not only not mandatory on sentencing Courts; they are not to be presumed reasonable.") [emphasis in original]; Gall v. United States, 552 U.S. 38, 50 (2007) (sentencing courts "may not presume that the Guidelines range is reasonable."). Nor can it refuse to consider non-Guidelines sentences in ordinary cases. See Pepper, --- S. Ct.---, 2011 WL 709543 at *13 (citing Gall, 552 U.S. at 47).

At the third stage of sentencing, the Court may, pursuant to the goals of sentencing set forth at 18 U.S.C. §3553(a), vary from the Guidelines because of case-specific considerations, policy reasons, or both. See Spears v. United States, --- U.S.---, 129 S. Ct. 840, 843 (2009). As the Supreme Court has said again and again since its decision in Booker, judges have the power to impose sentences that are sufficient, but not greater than necessary to satisfy the statutory purposes of sentencing, to consider all the characteristics of the offender and circumstances of the offense, and to reject advisory guidelines that are not based on national sentencing data and empirical research. See United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 551 U.S. 338 (2007); Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); Spears v. United States, 129 S. Ct. 840 (2009); Nelson v. United States, 129 S. Ct. 890 (2009). See also 18 U.S.C. §3553(a); United States v. Tomko, 562 F.3d 558, 560-561 (3d Cir. 2009) (en banc).[2] Indeed, district Court's exercise of their independent discretion furthers the process of "continuous evolution" contemplated by the Guidelines themselves. Rita, 551 U.S. at 350 (2007). Moreover, the Court is free to disagree with the guidelines on policy grounds alone - even where those guidelines were created pursuant to Congressional directive. See

Merced, 603 F.3d at 218. See also Pepper, 2011 WL 709543 at *16 ("[O]ur post-Booker

decisions make clear that a district Court may in appropriate cases impose a non-Guidelines sentence based on disagreement with the Co1mnission's views.") In short, in arriving at a final sentence, the Court should consider the "fullest information possible concerning the defendant's life and characteristics," <u>Pepper,</u> --- S. Ct. ---, 2011 WL 709543 at *8 (internal quotation marks and citations omitted), and impose the sentence that is minimally necessary to fulfill the goals of sentencing for Abdoulaye Diallo. *Id.* At 600. The Supreme Court held that the district judge properly considered the relevant factors in Gall's case, consisting of Gall's age, his early withdrawal from the conspiracy, and his efforts to rehabilitate himself as supporting a variance under several §3553 (a) factors. *Id.* At 600-01. The Eighth Circuit's view that the district judge did not give enough weight to the "seriousness of the offense," and the need to avoid unwarranted sentencing disparities, was belied by the record. *Id.* at 599.

As such, *Gall* re-emphasized that appellate courts have a limited role in reviewing criminal sentences. While the aforementioned Circuit Court clearly disagreed with the district judge's §3553 (a) analysis and his ultimate sentence, the Supreme Court underscored that "it is not for the Court of Appeals to decide *de nova* whether the justification for a variance is sufficient or the sentence reasonable." *Id.* at 601-02. Instead, a Court of Appeals must defer to a district judge's, "reasoned and reasonable decision that the §3553 (a) factors, on the whole, justify the sentence."

## C.  Imposition of Sentence

## 18 U.S.C. §3553 (A)

## Factors To Be Considered In Imposing a Sentence

# 3553(a) 1.

# Nature and Circumstances of the Offense and History and Characteristics of the Defendant;

### Nature and Circumstances of the Offense:

The need for retribution is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in continuing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?,* 89 Minn. L. Rev. 571, 590 (February 2005). **At no time did the defendant intend to cause harm or death to any individual and therefore his degree of intent should be considered accordingly.**

### Characteristics of the Defendant:

The defendant has submitted various character letters from relatives and friends attesting

to his character. The guidelines fail to consider a defendant's character.

While the guidelines only account for the criminal history, §3553 (a) requires the Court to consider the character of the defendant. Courts have the ability to grant a variance from the applicable guidelines based in part on characteristics of the Defendant or taken together with other reasons. The Defendant has been described in the various submitted character letters as "Hard working, family oriented, compassionate, loving", and a "Kind and caring individual that would give the shirt off his back to a person in need", all of which evidences the contracting traits presented by Abdoulaye Diallo. The traits of this young man as described in the letters suggested that he is capable of resuming a lawful, productive life and remain drug free. There is hope in this young man and a significant downward variance from the Guidelines is warranted in this case.

For all of the above reasons relating to the characteristics of the defendant and all the other reasons, the defense respectfully requests a significant downward variance from the applicable guidelines.

Henry Clay, a U.S. orator and politician (I 777-1852) once said:

*"Of all the properties which belong to Honorable men, not one is so highly prized as that of character. "*

In Abdoulaye Diallo, the Court has before it a man who has made mistakes. People who have good character often make mistakes. Abdoulaye Diallo's mistakes are not truly reflective of his character. A true measure of Abdoulaye Diallo's character will be determined by his actions going forward. Given the opportunity, the defense has no doubt that he will live a law-abiding productive life as he has shown through his acceptance of responsibility. His past character, his recent efforts and his commitment are on display for this Court. The Court can feel confident that Abdoulaye Diallo has the integrity and character to move forward without the need the for

lengthy prison sentence as the guidelines advise. Mr. Diallo's character traits quite simply and unmistakably show that he is worthy of a second chance. The Government has placed its trust and faith in Abdoulaye Diallo. It is respectfully requested that this court consider the various character letters with some mercy and allow restoration, forgiveness, reconciliation and hope to take place.

# *3553(a)(2)(A)*
# *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;*

The Court must consider §3553 (a)(2)(A) in fashioning the appropriate sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. In this individual case, a prison sentence with a significant variance form the guidelines and mandatory minimum statutes along with other strict requirements given its' uniqueness and atypical circumstances; would never be viewed as "unreasonable" applying an abuse-of discretion standard as per *Gall*. How could it even be said that if the Court imposed a sentence which varied downward in a significant fashion from the suggested guideline sentence-regardless of whether the Court adopts the government's assertion or the defense's assertion as to the appropriate guideline range - that an abuse of discretion occurred making the sentence unreasonable foe the reasons set forth herein and in open Court.

# *3553(a)(2)(B)*

# *To afford adequate deterrence to Criminal Conduct:*

Any prison sentence in this matter will satisfy the need to "deter criminal conduct" when the court considers this factor at the sentencing. It is respectfully submitted that given Abdoulaya Diallo's willingness to voluntarily accept responsibility for his involvement at the time of arrest, that he presents a low risk of recidivism making a lengthy prison sentence unnecessary.

Although differing in exact nature of the offense to the current case, in the otherwise fraudulent scheme present in *US. v. Gardellini,* the U.S. District Court for the District of D.C. sentenced the defendant to five years' probation and a fine of $15,000. [2] The defendant pleaded guilty to 26 U.S.C. § 7206(1) (filing a false income tax return).[3] The defendant had "avoided income tax on capital gains from real estate, on ordinary income from the exercise of stock options, and on interest from those accounts."[4] The district court considered that the defendant cooperated with the authorities and accepted responsibility, had a low risk of recidivism, had already been somewhat punished by being prosecuted, and "'what really deters' white collar

---

[2] *U.S. v. Gardellini,* 545 F.3d 1089, 1090, 383 U.S.App.D.C. 278,279 (D.D.C. 2008).
[3] Id. at 1091, 383 U.S.App.D.C. at 279
[4] .· Id. at 1097, 383 U.S.App.D.C. at 256

criminals is 'the efforts of prosecutors ... in vigorously enforcing the laws.'" [5] The defendant had paid restitution prior to sentencing, id., owing $94,000.[6]

Understanding the instant matter is not a "White Collar Crime" it can be said that given that Abdoulaye Diallo's "character and willingness to seek treatment for his substance abuse disorder that " he certainly falls into this category. Based on the aforementioned, the Defendant implores the Court to consider a sentence below the Guidelines, with emphasis on a punitive measure that does not include lengthy incarceration.

[5] Id. at 280, 383 U.S.App.D.C. at 1091
[6] · Id. at 1097, 383 U.S.App.D.C. at 286.

# *3553(a)(2)(C)*

# *To protect the public from further Crimes of the Defendant:*

### *LOW RISK OF RECIDIVISM*

According to a report on the U.S. Sentencing Commission's Legislative Mandate, "Recidivism rates decline relatively consistently as age increases, from 35.5% under age 21 to 9.5% over age 50."[7] Abdoulaye Diallo, at the age of 23, thus inherently possesses a declining rate of recidivism.

[7] *Id.*

# *3553(a)(2)(D)*

## *To provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner:*

The defendant has a sever substance and alcohol abuse disorder. As documented in the presentence report. It is respectfully submitted that the Defendant would benefit greatly from drug counseling as part of any sentence imposed herein as it appears long term drug use has negatively impacted Abdoulaye Diallo and undoubtably is directly related to his involvement in the instant offense.

# *3553(a)(3)*

# *The kinds of sentences available:*

Post *Booker,* this Court has available different types of dispositions to address. The defendant submits the Court has wide discretion in imposing the appropriate sentence taking into consideration 3553(a) factors.

Non-Prison options for the Court:

1.  Community confinement

2.  House Arrest with 24/7 Electronic Home Monitoring

3.  Restitution

4.  Community Service

5.  Supervised release

If the court is inclined to impose a sentence involving imprisonment, then for the reasons set forth herein and in open court a significant downward variance and/or departure would not offend the Government, society, victims or the advice of the guidelines.

.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Docket No.: 1:18CR000007-001 (LPS)** |
| | : | |
| **ABDOULAYE DIALLO** | : | |
| | : | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing has been served this day via

electronic filing upon the following:

**Honorable Leonard P. Stark**
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26
Room 6124
Wilmington, DE 19801-3555
(302)573-6310

**Assistant U.S. Attorney**
Jennifer K. Welsh, Esquire
1313 N. Market Street, Suite 400
P.O. Box 2046
Wilmington, DE 19801
(302)573-6562

DATE: January 7, 2020

BY: _____
    EUGENE P. TINARI, ESQUIRE
    Attorney for Defendant
    Attorney Identification No.: 054512
    1528 Walnut Street, Ste 1212
    Philadelphia, PA 19102
    T: 215-569-2551 / F: 215-405-2561
    Email: eugene@etinarilaw.com

Tahirou Diallo

1 Pike Place

Newark, DE 19702

(302)-437-9629

Tdiallo1@umes.edu

October 31, 201827, 2018

Honorable Judge Leonard Stark

United States District Court for the District of Delaware

J. Caleb Boggs Federal Building

844 N. King St, Wilmington, DE 19801

Wilmington, DE 19801

Ref: Sentencing of Abdoulaye Diallo

Dear Judge Stark,

My name is Tahirou Diallo, the little brother of Abdoulaye Diallo. I am the second oldest out all

children in the household. I am attending college at the University of Maryland Eastern Shore

and, I am currently in my senior year. Abdoulaye and I have been very close since birth. I know

Abdoulaye to be smart, intelligent, brave, and caring, a family man, etc. I am asking to impose

only the minimum sentence upon Abdoulaye.

I understand the trouble Abdoulaye is in, because he has shared those problems with me and

admitted to his wrongdoings. I will make sure and do everything in my power to help him after

his legal troubles are over. Abdoulaye has always been supportive of me so, it is only right that I

do the same in return. He would always call or text daily while I would be away at school to check up on me and, see how I was doing. Sometimes he would just randomly send me money without me asking or ask to pay one of my phone bills. Whenever I needed something he would take the time out his day to stop doing whatever he was doing and, make sure I got what I needed.  I could always depend on him for things such as advice, support, financial support, etc. Abdoulaye always made sure I would never take his path in life. Besides my parents, and myself he is one of the main reasons I am in college now. He inspires me to finish school, have a great career, and live a great life.

Abdoulaye certainly understands that he has done wrong and expresses regrets at his actions. He is a great brother and like I said, very intelligent with a lot of potential. He would like to learn from this experience and move forward with his life. Abdoulaye will most certainly turn his life around if given another chance. I believe a long prison term will severe a tremendous hardship for our entire family. I hope you consider this information in regards to the charges Abdoulaye is facing and apply the minimum to his sentencing.


Thank you in advance for considering my request.

Sincerely,

Tahirrou Diallo

Saikou Oumar Diallo

1 Pike Place

Newark DE 19720

302.244.8730

Sdiallo21@verizon.net


October 31, 2018


Honorable Judge Leonard Stark

United States District Court for the District of Delaware

J. Caleb Boggs Federal Building

844 N. King St, Wilmington, DE 19801

Wilmington, DE 19801


Dear Judge Stark,


My Name is Saikou Oumar Diallo, father of Abboulaye Diallo who is pending sentencing soon. First, on behalf of my family I would like to apologize to the victim's family; what Abdoulaye has done is terrible as we are fully aware how hard it is to raise a kid.

Although disappointed, I wanted to take the time as his father to ask for your leniency on his sentencing. My wife and I vow to spend more time with him and make sure that you or any other judge will never have to see him again as a defendant.

Abboulaye is my eldest of four children. He is loving and respectful to both my wife and me. He is caring and protective of his siblings, dutiful to his community and friends. Abboulaye was a great child growing up. He was a good student and enjoyed playing

basketball. He graduated from high school in 2013 and attended Delaware Tech Community College.

Sadly, during his sophomore year at Delaware Tech, he started hanging out with the wrong crowd and selling drugs. He was subsequently arrested and charged for possession with intent for which he deeply regrets. My son Abdoulaye has never denied responsibilities for the criminal offense committed. He has instead focus his time behind bars on rehabilitating himself and getting closer to God. His arrest has served as a wake-up call and seeing the disappointment from his family broke him down. Although this has been a challenging time for him and our family, I can honestly say that he has been scared straight and he understands the importance of civic duty to be the good change we want to see in this world.

My family has great ties to the Delaware community. My cousin, Abdul Gadiri Diallo is willing to help him get a job with his construction company immediately pending his release. Furthermore, with the support system in place I have no doubt that my son will stay out of trouble and become a valued member of our community. I truly believe if given another chance, Abdoulaye will go back to school, get a job and stay out of trouble.

Thank you for considering this request for leniency. I have faith that the right course of action will be considered by the Justice Department.


Sincerely,


Saikou O. Diallo

Thierno Souleymane Diallo
1002 Sandalwood Dr. Atlanta, GA, 30350
(302) 566 5980 / Tidiallo2@gmail.com

November 06, 2018

Honorable Judge Leonard Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King St, Wilmington, DE 19801

"Sentencing of Abdoulaye Diallo, **Case No. 1:18-cr-00007-LPS**"

Dear Honorable Judge Stark,

By way of introduction, I am Thierno Souleymane Diallo and, I am writing this letter on behalf of a family member of mine who is presently before you on criminal charges and is due for sentencing this November 2018.

I have known Abdoulaye since he was a toddler as his parents (Saikou Diallo & Ramata Diallo) took me in when I arrived in the USA from Africa in 1998. We all grew up in a good and positive environment, and as a result, I was able to accomplish many great things, and this is all thanks to them. Hence, it really saddened me to see them in this situation today as these are really great folks who are always reaching out to help others.

I was really shocked and disappointed in his behavior as he has always been a good kid. These incidents I heard of are very unlike Abdoulaye's character as I have known it for years. Unfortunately, like many kids his age, bad influence can sometimes take the lead and put them in the wrong place in society. I believe this is the case with him as I can attest that he grew up happily, had good grades and good behavior throughout high school, and was excited to go to college, play basketball, and earn his engineering degree. We come from a humble family with high morals and values and he already how hurt we all are by his actions, but we refuse to give up on him as it is also our duty to put him in the right path.

Judge Stark, I am respectfully asking for mercy of this Court when Abdoulaye is sentenced. I pray that you will give heartfelt consideration in making that decision and that you will take into consideration all of the good that Abdoulaye has accomplished in his life; as well as all that he can give back to society if given a second chance.

This will perhaps be the 100th (+) letter you will receive regarding this case, but it will show how we are all mobilized to help him follow the right path.

Thank you in advance for your time and for your consideration.

Sincerely yours,

Thierno Souleymane Diallo

Djamilah Diallo Nguessan-Zekre
1002 Sandalwood Dr. Atlanta, GA, 30350
(302) 252 1508 / djamilahzekre@gmail.com

November 06, 2018

Honorable Judge Leonard Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King St, Wilmington, DE 19801

"Sentencing of Abdoulaye Diallo, Case USA v. Diallo No. 1:18-cr-00007-LPS"

Dear Honorable Judge Stark,

My name is Djamilah Diallo Nguessan-Zekre and I am a family member of Abdoulaye Diallo
whose case is presently before your court on criminal charges and is due for sentencing this
month.

Your honor, I am writing this letter to appeal for leniency on the case of Abdoulaye Diallo. I
was surprised to hear of Abdoulaye's arrest given his background and the safe environment he
grew up from. Abdoulaye comes from a humble and hardworking family that established a
successful business in Delaware. His parents filled him with love and education for a better
tomorrow. Unfortunately, Abdoulaye fell under the influence of peer pressure and bad
company which eventually led to this outcome.

I recognize the full responsibility of Abdoulaye in making the wrong choices but I believe that
in retrospect, he has deep regrets and learned a great deal from this unfortunate experience.
Moreover, this situation has raised a strong sense of awareness and responsibility in our
family and community. Abdoulaye is surrounded by a strong support system that will guide
and ensure his proper rehabilitation to the right path, if pardoned by your court.

Judge Stark, I am respectfully asking for your clemency in Abdoulaye's sentence. I pray that
you see in him a young man that made mistakes that he truly regrets but that you also take
into consideration the strong support system surrounding Abdoulaye's reinstatement into an
exemplary life in our society. Please give Abdoulaye a second chance at life.

I thank you for taking the time to read my letter and for considering my plea.

Sincerely yours,

Djamilah Diallo Nguessan-Zekre

Thierno Diallo

1 Pike Place

Newark, DE 19702

(302)-525-1464

diallot4@gmail.com

October 15, 2018

Honorable Judge Leonard Stark

United States District Court for the District of Delaware

J.Caleb Boggs Federal Building

844 N.King St, Wilmington, De 19801

Re: Abdoulaye Diallo

Dear Judge Stark,

My name is Thierno Diallo and Abdoulaye Diallo is my oldest brother. I grew up with Abdoulaye my whole life and he has always been there for me. My love and respect for him is unquestionable because he is more than just a brother to me, he is a caretaker, mentor, motivator, and basically like a best friend to me. He always tried his best when it came to getting me anything I needed. He is the best brother I could ask for and I wouldn't trade him for the world.

I understand that my brother is looking at a max sentence of 20 years, which will lead him to miss a lot milestone in my siblings' lives and me. I have not talked to him about the trouble that he has put himself in only because it will not help change the past. I would rather talk about how he is doing and doing everything I can possibly do to make sure that he can move forward in life. My family and I will be able to give him a place to stay and I will especially make sure that I am there for him as much as he has been there for me all my life. I just want to make sure that he has all he needs so he does not make the same mistake ever again.

My brother, Abdoulaye, is honestly a good person. When my parents are away working, he steps up as the man of the house and make sure that my siblings and me are doing what we need to do whether it is homework, cleaning up, and more. He makes sure that we are all fed and checks up on us to see if we are okay. Even in jail, he still motivates me to do my best and gives me important advices. Therefore, I can avoid ending up in the same situation he is in. He always puts his family before himself and that is why I love him so much. My brother is much than just a brother to me, Abdoulaye is basically a part of me because he helped shaped me into the person I am today. He made sure I avoided trouble and always kept me focused on school and basketball. So taking him away is like a taking a piece of me away with him

I know that my brother made a very big mistake, but he still is young himself and did not know any better. He realizes what he did and has been regretting it ever since but he knows that he has to face the consequences of his actions. He wants to move past this chapter of his life and start all over and I will be right there next to him in his journey to regain his freedom and be part of society again. All I ask is after reading this letter is to consider giving the lowest sentence

possible because I need my brother in my life. I want him there to see me graduate, complete

college, get married, and even be there for the birth of his niece or nephew. I want him to

continue being a part of my life just like he has for the past 17 years.

Respectfully yours,

Thierno Diallo

Mamadou H. Diallo

109 Climbing Vine Ave

Smyrna, DE 19977

470.775.9371

Hassimdiallo@gmail.com

10/25/2018

To the Honorable Judge Leonard Stark,

My name is Mamadou H. Diallo, I work as a Controller for JPMorgan Chase and I am cousin of Abdoulaye Diallo. I wanted to take time to implore for your leniency during sentencing. Our family is extremely saddened by the recent course of actions.

Abdoulaye has always been respectful to me. He is a bit shy but not reserve. He is known to go above and beyond to help and care for his siblings and relatives. When I moved to Delaware in 2012, he gladly helped me unload my UHAUL. I can certainly attest that many people in our community have similar stories. His arrest has served as a wake-up call and seeing the discontent from his family has marked him for life. He is aware of the sacrifices his parents made to provide for him and his siblings. I truthfully believe if given another chance, Abdoulaye will go back to school, get a job and stay out of trouble.

Even though we are all so busy in our daily lives, I promised you and my uncle to make time and take him under my wings. I will check-in weekly with him and give him advices and make sure he has all the support he needs to seamlessly transition in our society. I will also leverage my connections to help him land a job and make sure he stays on tract.

Our family regrets crossing path with you under these circumstances and thank you for considering this plead for leniency

Kind regards,

Mamadou H. Diallo

Yaye Diallo
6940 Sepulveda blvd, Van Nuys, CA 91405
(302) 635-46-86/ Ydial82384@gmail.com
November 06, 2018

Honorable Judge Leonard Stark
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King St, Wilmington, DE 19801

"Sentencing of Abdoulaye Diallo, Case USA v. Diallo No. 1:18-cr-00007-LPS"


Dear Honorable Judge Stark,

I would like to respectfully introduce myself, my name is Yaye Diallo and I am one of Abdoulaye's family members. His father Saikou Diallo and mother Ramata Diallo have impacted my life in various ways. They gave the ability to move to the United States and offer me a better life and education. Due to the opportunities I've received from them, I've recently graduated with my Masters in Clinical Psychology and I will be pursuing a career as a Marriage Family Therapist in Los Angeles, California.

Abdoulaye and I grew up together in Newark, DE. His father has always been a father figure in my life; therefore, I believe that his father has raised us with the same amount of morals and values. Growing up, Abdoulaye was always a good kid and his main goal was to always make his parents proud. I honestly believe that most of the decisions he made during this unfortunate situation was based on peer relations and him possibly trying to "fit in". From a young age, our family installed a significant amount of morals and values in us; therefore, I am extremely shocked that this situation has occurred. Hearing this horrific news has been extremely devastating for my family and I. I've watched Abdoulaye grow up into a mature man and I've never imagined that he would be facing this hurdle.

Judge Stark, I am genuinely and respectfully asking for mercy during Abdoulaye's sentencing. I believe that this situation has thought him a drastic lesson and seeing the devastation in his family dynamic has influenced him to follow the positive path that has always been recommended and available for him.

Thank you for your time and consideration.

Sincerely yours,

Yaye Diallo