1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                                 - - -

4    UNITED STATES OF AMERICA,          :     CRIMINAL ACTION
                                        :
5              Plaintiff,               :
     v                                  :
6                                       :
     ABDOULAYE DIALLO,                  :
7    also known as AB,                  :
                                        :
8              Defendant.               :     NO. 18-7-LPS-1

9                                 - - -

10                          Wilmington, Delaware
                          Wednesday, January 8, 2020
11                          Sentencing Hearing

12                                - - -

13   BEFORE:        HONORABLE LEONARD A. STARK, Chief Judge

14   APPEARANCES:                 - - -

15

16             UNITED STATES ATTORNEY'S OFFICE
               BY:  JENNIFER K. WELSH, ESQ.
17             Assistant United States Attorney

18                  Counsel for Government

19

20             LAW OFFICE OF EUGENE P. TINARI
               BY:  EUGENE P. TINARI, ESQ.
21                  (Philadelphia, Pennsylvania)

22                  Counsel for Defendant Abdoulaye Diallo

23

24                                  Brian P. Gaffigan
                                    Official Court Reporter
25

1                            - oOo -

2                    P R O C E E D I N G S

3                    (REPORTER'S NOTE:  The following sentencing

4     hearing was held in open court, beginning at 4:23 p.m.;

5     following portion ordered sealed by the Court, bound

6     separately.)

7                    THE COURT:  Mr. Tinari, are you envisioning

8     having anybody testify?

9                    MR. TINARI:  No, Your Honor.  Just I will for

10    the record point out that there are numerous people here on

11    his behalf.

12                    THE COURT:  Right; and you should feel free to

13    do as you wish.  I only ask because of the latest of the day

14    and people have to make plans.

15                    MR. TINARI:  As I said, Your Honor, I don't, I

16    don't think in this situation the defense and the government

17    are too far off in what is being requested of the Court.

18                    THE COURT:  Okay.  While people are gathering,

19    let me say for the record that I am going to be turning to

20    what is the proper sentence for Mr. Diallo on the count he

21    pled guilty to, Distribution of a Mixture and Substance

22    Containing Fentanyl, a violation of Title 21, United States

23    Code, Section 841(a)(1) and (b)(1)(C).

24                    And, Mr. Tinari, we'll hear from you first.  You

25    might want to wait for everyone to get settled.

1                      (Pause while large family and friend support

2      gathers.)

3                      MS. WELSH:  I just wanted to note something that

4      will make this slightly more fun for everyone.

5                      THE COURT:  Okay.

6                      MS. WELSH:  I'm looking through my guidelines

7      for the section that talks about this particular departure.

8      Give me a moment.

9                      Okay.  4A1.3 is the departure that applies when

10     one is alleging that their contract history category is

11     overstated.  And because of the unique situation here, the

12     defendant is a career offender.  This guideline provision

13     for the departure says that the most the Court can depart

14     for a career offender is from a VI to a V.

15                     Now, having granted that from a VI to a V, the

16     Court can then vary and say I'm actually going down further.

17                     THE COURT:  If I were to grant it.

18                     MS. WELSH:  If you were to.  I wanted to make

19     sure we do this precisely and say that because of this 4A

20     1.3 language, there is a limitation in 4A1.3b3 that says

21     there is a limitation on the extent of a downward departure

22     that the Court can give for career offenders.  That is, he

23     can be moved from a -- from 110 to 137 months down to 100 to

24     125 but no further on a departure motion.

25                     THE COURT:  Okay.  Thank you for pointing that

1    out.

2              (Counsel confer.)

3              MR. TINARI:  May we just have 30 seconds, Your

4    Honor?

5              THE COURT:  Yes.

6              (Pause.)

7              THE COURT:  Are you ready to proceed, Mr. Tinari?

8              MR. TINARI:  Yes.  Yes, Your Honor.

9              With respect to the issue as to the criminal

10   history being -- seriousness of the criminal history

11   overrepresented by the category, I don't know if Your Honor

12   wants me to proceed it by way of departure or variance, I

13   can do both.  I will submit to Your Honor that you have a

14   copy of the presentence report, of course, which indicates

15   that there were some contacts with law enforcement resulting

16   in convictions dealing with marijuana.

17             Normally when we see someone who is in a

18   Category VI or career offender, those types of cases usually

19   involve much more serious offenses where individuals have

20   served much more time than what has been expounded in the

21   presentence report.

22             Also given that we're talking about marijuana,

23   and not to minimize that it's marijuana, it is something

24   that I think the Court should consider in that regard and I

25   don't believe the government has any objection to that

1    departure which would take it from a VI to a V.

2                    THE COURT:  I don't think they do either, but

3    why don't we get that done with now.  Do you oppose

4    departure from VI to V?

5                    MS. WELSH:  Your Honor, I don't.  The only --

6    the only -- there were multiple reasons why I did this as a

7    various non-departure.  One of them is the Court will have

8    to make a finding specific reasons why the criminal history

9    category substantially overrepresents the seriousness of his

10   criminal history with the likelihood he will commit other

11   crimes.

12                    I think the Court could make such a finding here

13   that the defendant does have two priors, a drug dealing and

14   a possession with intent to distribute offenses, both of

15   which are career offender predicates, but one could imagine

16   a scenario certainly where one has two prior heroin dealings

17   or much more serious crimes for which they might have served

18   much more time and they would be in the same stead as this

19   defendant, which leads us to conclude that his Criminal

20   History Category is in fact overstated.

21                    THE COURT:  Okay.  Mr. Tinari, anything further?

22                    MR. TINARI:  No.  No, Your Honor.

23                    THE COURT:  All right.  I'm granting the motion

24   for downward departure pursuant to 4A1.3.  That is I find

25   that the Criminal History Category of VI which is what the

1    defendant gets as a career offender does significantly

2    overstate the seriousness of his criminal history.  It

3    doesn't look like the type of criminal history that we

4    normally see when someone is a career offender or a level VI

5    for any other reason.

6            I'm only allowed to depart down from criminal

7    history category from VI to V, given that the defendant is a

8    career offender, so I am departing down from level VI to

9    level VI meaning that the Advisory Guideline Range would be

10   an Offense Level 25 becomes 100 to 125 months; and that is

11   where I will start the analysis.

12           Any questions about that?

13           MS. WELSH:  No, Your Honor.

14           THE COURT:  Any questions?

15           MR. TINARI:  No, Your Honor.

16           THE COURT:  Okay.  Mr. Tinari, you may continue

17   with your presentation.

18           MR. TINARI:  Okay.  Did you say, what was that,

19   100 to --

20           THE COURT:  100 to 125.

21           MR. TINARI:  Okay.  Got it.  Understood.  Right,

22   Your Honor.

23           THE COURT:  Go ahead.

24           MR. TINARI:  I don't know, 31 years of doing

25   this, I haven't seen so much familial support at a

1    sentencing before.  I think this speaks volumes.  As they

2    say, a picture speaks a thousand words; right?

3                   THE COURT:  Let me note.  First of all, thank

4    you everyone for being here and for waiting patiently in the

5    hallway for us.  I'm running a little behind on my schedule

6    today.  I apologize for that.

7                   But, yeah, I'll note for the record this is

8    quite a lot of people.  Both sides of the courtroom benches

9    are nearly filled, so proceed.

10                   MR. TINARI:  Yes, and there is a reason for

11   that; and that is because they are all family and friends

12   who love and support my client; and they know that he is

13   someone who is worthy of a second chance, someone who is

14   deserving of the benefit of some leniency and mercy in this

15   case, not because they think what he did was not serious but

16   that there are redeeming qualities in Mr. Diallo that are

17   certainly evident.

18                   Character speaks a lot about individuals; and

19   when you have people willing to take off from work, take

20   out time from their routine to come to court and travel in

21   Delaware with this number of individuals, I suggest that

22   there really is nothing more than I could add to that other

23   than that they are here.

24                   This is a sentencing, Your Honor, that is

25   unusual at least in my experience in that we, the defense

and the government are very close in what we are asking this

Court to do in terms of a sentence here, and that is vary

downward from what you have already determined applicable

guidelines to be.

I suggest a two- or three-level reduction from

that particular sentence, from that sentencing guideline is

appropriate based on what is contained in the presentence

report, based upon what we talked about earlier and also,

Your Honor, I'm asking this Court to recommend that he be

permitted to participate in a drug program while he is

incarcerated.

I'm also asking this Court to consider making a

recommendation, knowing that it is only a recommendation, to

the Bureau of Prisons that he serve a sentence in a facility

close by his home, either Fort Dix or Fairton, such that his

family and friends can continue to support him.

Based on what he has done, I suggest that he has

turned a leaf; that he understands the seriousness of these

offenses; and that at this age, 24 years of age, having had

difficulty with use and abuse of narcotics and now having,

of course, a record that is enhanced beyond what we've

talked about in terms of his criminal history, that he, he

can't ever again involve himself in his type of activity.

He will not catch any breaks in the future; and he will face

even more severe consequences if he continues this behavior.

1          So I think at this stage of his life, he is

2     fully aware of that; and both his actions in this case from

3     the time of his arrest up until now are indicative of the

4     fact that he is worthy of a second chance; and I would ask

5     Your Honor to consider the downward departure that both

6     sides are seeking.

7          THE COURT:  Okay.  Does Mr. Diallo wish to

8     speak?

9          (The defendant and his counsel confer.)

10          THE COURT:  If so, I'll have you come to the

11     podium for us, please.

12          Good afternoon again.

13          THE DEFENDANT:  Good afternoon.

14          I just wanted to apologize to the victim of the

15     family, Joel Davis; and actually wanted to say I'm sorry and

16     apologize to my family, and thank them for all their support

17     that they have been giving me since I have been here.  I

18     know it is stressful on them; it has been stressful on me;

19     so I just, you know, apologize; keep it brief and say thank

20     you.  That's all.

21          THE COURT:  Okay.  Thank you very much.

22          THE DEFENDANT:  Thanks for giving me a chance to

23     speak.

24          THE COURT:  Is there anything else, Mr. Tinari,

25     at this time?

```
 1              MR. TINARI:  No, Your Honor.

 2              THE COURT:  All right.  Ms. Welsh.

 3              MS. WELSH:  Your Honor, this crime, this

 4     defendant's conduct is an example of why drug dealing is so

 5     acutely dangerous.

 6              You can be new to drug dealing, you can sell

 7     just small amounts of drugs.  You can even think that you

 8     are selling one type of drug, and it turns out you are

 9     actually selling a different type, and people can die no

10     matter how long you have been doing it and no matter how

11     small time of a drug dealer you think you are.

12              And here, someone did die.  The defendant's

13     decision to, you know, based on his history, transition from

14     selling marijuana into selling heroin was a reason why Joel

15     Davis, the reason why Joel Davis is not here today.

16              On its face, with the fact that he is a career

17     offender, that he has these prior convictions, you know,

18     there is guns and drugs or a gun and drugs in his criminal

19     history, it would appear that this defendant needs a very

20     lengthy sentence, especially in light of the fact that his

21     drugs took a life.

22              And then we also have to consider the fact that

23     he re-offended since he has even been arrested in this case

24     on a much smaller scale.

25              But there are mitigators here.  And if the
```

1    Court's job at a sentencing is to take into account the

2    totality of circumstances and many factors in Section

3    3553(a), one gets a sense that there are many weights on

4    both sides of this case.  And some of the weights are

5    sitting behind me, pulling as mitigators for this defendant.

6         We have never see this much family support for

7    someone who is sitting in court charged with a drug offense.

8    We have seen courtrooms this packed before, mostly for

9    multidefendant cases, white collar types of cases.  This is

10   new to me.  And I would expect that it's new to the Court.

11        And this is clearly a defendant who has had a

12   lot of opportunity to do the right thing and has made bad

13   choices; and he is going to have to spend a little bit of

14   time getting it, why that happened and how he can stop it

15   from happening again.

16        So the government submits that the right balance

17   here is a sentence of 84 months and that this crime is

18   simply too serious.  The repercussions of the defendant's

19   conduct were too tragic for the Court to impose less of a

20   sentence than that.  That is a sufficient amount of mercy to

21   give here.

22        The nature and circumstances of the offense.

23   The defendant was dealing drugs.  He was a low level heroin

24   dealer dealing heroin and it turns out fentanyl.

25        It's important to remember that this case has

been pending for a long time; and at the time that the defendant was selling drugs, it is likely that he did not know that his heroin contained fentanyl.  Fentanyl was really kind of new around this time.  It's likely that everyone involved here, Mr. Davis and his friends and the defendant, that none of them knew that the baggies that the defendant was selling actually contained a drug that was 50 times more potent than heroin.

He was selling approximately five logs.  He was getting from his supplier approximately five logs of heroin at a time, and that makes him pretty low level for someone who might appear in Federal Court.  He is here because of the harm he caused.  His drugs killed Joel Davis.

It's true, of course, that Mr. Davis intended to use heroin that day.  He didn't, from what any of us can tell, intend to use fentanyl; and had his friends picked up from a different drug dealer that day, he might have been around to have the opportunity that the defendant has, which is to take time to get himself together and to fight his addiction another day.

And why did the defendant make this choice?  I mean, all indicators seem to be that he did it because it was easy money; and he did it despite so very many reasons not to.

And I'll move on to the history and

1    characteristics briefly.

2              The defendant has a very, very large supportive

3    family.  He was the recipient of a scholarship to college.

4    He was a high school graduate.  And he had all of this going

5    for him before he made the decision to start selling heroin

6    or while he was selling heroin.

7              And so while, of course, there are many parts

8    of that that are on the mercy side, it's also very, very

9    frustrating that he squandered all of that and instead of

10   following the right path which was set before him by so many

11   people, he chose to sell drugs because of his greed.

12             In terms of just punishment, the government

13   submits that anything less than 84 months wouldn't justly

14   punish the defendant for what he did.  He took a life.  And

15   there is also deterrence reasons to impose a really

16   substantial sentence like 84 months here.

17             I'm not certain that this defendant needs

18   anything more than that to get the message.  This is by far

19   already the most amount of time he has served in prison.

20             But he did, certainly he didn't get the message

21   early on because he had his girlfriend try to bring him

22   drugs at the prison; and there is also the concept of

23   general deterrence for us to consider; that is, sending a

24   message to people who are out there dealing drugs, people

25   who are out there on the street that even low level dealing

1  like this, if you take a life, you are going to jail for a

2  very, very long time.

3          The defendant functionally ripped himself away

4  from his very supportive family for a period by engaging in

5  this conduct; but unfortunately he also ripped Joel Davis

6  away from his supportive family and he is not going to have

7  the opportunity to rehabilitate himself; so the government

8  submits that 84 months is an appropriate sentence.

9          THE COURT:  Okay.  Thank you very much.

10          Mr. Tinari, anything you want to add?

11          MR. TINARI:  No, Your Honor.

12          THE COURT:  Okay.

13          Well, let me first note, I have considered the

14  relevant factors.  There are many of them that the law

15  requires me to consider in formulating a sentence.  They're

16  set out in a statute; it's Title 18 of the United States

17  Code, Section 3553(a).

18          The law requires that I begin my analysis with

19  the sentencing guidelines, which here recommend a sentence

20  of between 100 and 125 months.

21          I must, as the law also requires, make an

22  individualized assessment of the sentence based on the facts

23  presented.

24          And I'm ultimately obligated to impose a

25  sentence that is sufficient but not greater than necessary

1   to achieve the purposes of sentencing.

2            And I have done my best to do all of this.

3            And I think the best way to articulate my

4   thinking on this and the sentence I'm going to impose is to

5   make two observations:

6            The first being that I am speaking to a

7   courtroom that is almost full; and as the prosecutor noted,

8   that is almost unheard of; and in my experience, like hers,

9   and like I think Mr. Tinari reflected as well and he has

10  been in this business a long time, in a case involving drug

11  dealing, this is for me unprecedented to be speaking to so

12  many people taking time to be here on behalf of the

13  defendant.

14            I hope, I hope that Mr. Diallo understands just

15  how fortunate he is to have this stunning outpouring of

16  support.  It was clear on the record once I got the

17  submission from the defendant yesterday, many people took

18  time to write to me and make sure that I understood that

19  they're there for him as he goes forward in life.  That was

20  one thing.  And that was significant, but then to all be

21  here today and to show your support yet again reflects well

22  on you, Mr. Diallo; and I hope you understand that that is

23  not the way we typically see sentencings proceed in this

24  court.

25            The second thing is in exercising my discretion,

which is a challenging thing to do, I think that everything

that the prosecutor said here today was correct.  And I

think that the government has been utterly reasonable in

their analysis and in the sentence they suggest that the

Court impose; so the sentence I'm going to impose is going

to be the 84 months that the government has recommended.

I think that the government could have made an

argument persuasively for a higher sentence, including

anything in the guidelines of 100 to 125 months, but for

reasons that were articulated extremely well during the

proceedings today and in the submissions previously, I think

that 84 months is the most reasonable and appropriate

sentence.

I'll say a little bit more but, again, I agree

with everything that the prosecutor said.

In reaching my decision, I have considered the

nature and circumstances of the offense, the need for the

sentence imposed to reflect the seriousness of the offense,

to promote respect for the law and to provide just

punishment for the offense.

The defendant said himself he was engaged in

drug dealing due to greed; and as the government correctly

says, and it is tragic and I don't believe that Mr. Diallo

intended this, but greed can kill and in this case it did.

And the victim here, the most direct victim of the

defendant's drug dealing is Mr. Davis.  He is not here.  He

can't be here.  He unfortunately passed away from using

drugs that were sold by the defendant.

Dealing in heroin is a seriously dangerous thing

to do; and evidently unbeknownst to Mr. Diallo, when he

thought he was selling heroin or in this particular occasion

he was selling fentanyl, it was deadly; and tragically

Mr. Davis died.  We have heard from his survivable family

members; and I have to be mindful of the tragic consequences

of the crime that the defendant committed.

He has to be punished for it.  Those are all

some of the purposes of the sentencing that I cannot lose

sight of.

I have to consider the need for deterrence, both

of this defendant and of others who might be tempted, who

might think there is some way to get easy money and I'll

just sell drugs.  You know, people are probably going to use

it anyway.  If I don't sell it, someone else will.

That kind of reasoning only contributes to the

problem and can have deadly consequences; and I have to have

all that in mind; and the sentence that I'm imposing of

84 months, which is seven years, hopefully -- and I do

believe that this is plenty enough to deter Mr. Diallo, but

I hope it also send a message and deters anyone else who

might even momentarily consider the idea of following his

1    path and selling these poisons into our community.

2             I factored in on the deterrence question the

3    defendant's criminal history.  It is a significant criminal

4    history.  He wouldn't have added up to a career offender

5    if he didn't have a significant criminal history, but I

6    recognize the sentence he is receiving now and will serve

7    going forward is by far the longest sentence in prison that

8    he is serving; and I think I'm imposing enough time to

9    deter him, as even Mr. Tinari said; and I believe Mr. Diallo

10   understands, nothing good comes of returning to a life of

11   crime.

12            You may be lucky enough to have some of these

13   folks here to support you today to stick with you if you

14   take this same wrong turn again.  I'm not sure that all of

15   them will stand by you if you make the same mistakes again,

16   but they may.  But the government is not going to be

17   sympathetic to you the next time; and I don't think that the

18   Judge who end up sentencing you will be.

19            So this is your break.  And you shouldn't expect

20   there will be another one; and I hope that that and all

21   the other things you have going for you will keep you from

22   taking this path again.

23            I have considered all the other personal

24   characteristics.  It's worth emphasizing one more time the

25   stunning showing of support that the defendant has which

gives me great hope that with his education, with his

skills, that he will prove over hopefully the course of a

long life that this was but a fleeting and tragic turn in

his history.

Squandered is the right word.  He squandered a

lot of college education, scholarship, and I hope that this

is the end of the squandering.

I have also considered the matters that I

discussed with the party at the beginning of the hearing.  I

have considered the need that my sentence not impose any

unwarranted sentencing disparities.

I have considered the request for an additional

departure or variance; but I agree with the government, as I

have said, anything below 84 months I think is not warranted

here.

And I will include in my sentence a

recommendation to the Bureau of Prisons that the defendant

be considered for designation at either Fort Dix or Fairton

so he can hopefully stay within a reasonable distance of his

large community of support and recommend drug treatment be

provided to him as well.

With that, let me formally state the sentence I

intend to impose.

Pursuant to the Sentencing Reform Act of 1984,

it is the judgment of the Court that the defendant Abdoulaye

Diallo is hereby committed to the custody of the Bureau of Prisons, for a period of 84 months.  The Court has considered all of the factors set for the under 18 U.S.C., Section 3553(a) and finds this sentence to be reasonable and appropriate.

Upon release from imprisonment, you shall be placed on supervised release for a term of three years.

Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the Probation Office in the District to which you are released.

While on supervised release, you shall not commit another federal, state or local crime; you shall comply with the standard conditions that have been adopted by this Court; and you shall comply with the mandatory and special conditions as outlined in paragraph 116 of the presentence report.

It is further ordered you shall pay to the United States a special assessment of $100 which shall be due immediately.

The Court finds you do not have the ability to pay a fine.  Therefore, the Court will waive the fine in this case.

Counsel, do you know of any reasons other than those already stated why sentence should not be imposed as announced?

```
 1                    MS. WELSH:  I do not, Your Honor.
 2                    MR. TINARI:  Just that he receive credit for
 3     time served which I know he is going to get?
 4                    THE COURT:  Right.  I think technically that is
 5     a matter for the Bureau of Prisons.
 6                    MR. TINARI:  It is.
 7                    THE COURT:  I have no reason to think they will
 8     not give him full credit for the approximately two years
 9     that he has served.
10                    MR. TINARI:  Okay.
11                    THE COURT:  Certainly, that is my absolute
12     intent --
13                    MR. TINARI:  Okay.
14                    THE COURT:  -- that happen.
15                    MR. TINARI:  Thank you, Your Honor.
16                    THE COURT:  Is there any issue that you have
17     raised that I believe I have may not have given meaningful
18     consideration to?
19                    MS. WELSH:  No, Your Honor.
20                    MR. TINARI:  No, Your Honor.
21                    THE COURT:  It is then the Order of this Court
22     that the sentence be imposed as stated.  The Clerk's Office
23     shall prepare the judgment.  My Deputy Clerk shall enter the
24     judgment.
25                    I should mention, Mr. Diallo, ordinarily you
```

1    would have the right to appeal the sentence I impose.  Your

2    appellate rights are limited, if not eliminated by the

3    appellate waiver provision of your plea agreement.

4    Nonetheless, you should discuss with your attorney any right

5    to appeal.

6              Any appeal would need to be filed within 14 days

7    of when I enter the written judgment of conviction.  If you

8    do, you should file an appeal and you believe you can't

9    afford the costs of paying that appeal, you can ask for

10   permission to file an appeal without paying those costs.

11             Ms. Welsh, is there anything else in this

12   matter?

13             MS. WELSH:  No, Your Honor.

14             THE COURT:  And Mr. Tinari?

15             MR. TINARI:  No, Your Honor.

16             THE COURT:  Mr. Diallo, I wish you the best of

17   luck going forward; and again I want to thank everyone who

18   is here to show their support; and I hope you continue to

19   provide support to Mr. Diallo.

20             We will be in recess.

21             (Sentencing hearing ends at 5:05 p.m.)

22       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.
23

24                      /s/ Brian P. Gaffigan
                      Official Court Reporter
25                       U.S. District Court