IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Criminal Action No. 18-0007-GBW |
| ABDOULAYE DIALLO, | |
| Defendant. | |

## MEMORANDUM ORDER

This Court sentenced Abdoulaye Diallo ("Diallo") to eighty-four (84) months in prison in January 2020. D.I. 43. Pending now before the Court is Diallo's "motion for a reduction of sentence via compassionate release under 18 U.S.C. [§] 3582(c)(1)(A)." D.I. 50 at 1. The Court has considered the parties' briefing, D.I. 50; D.I. 52, and no hearing is necessary. For the reasons below, the Court denies Diallo's motion.

### I.   BACKGROUND

On January 8, 2020, Judge Leonard Stark sentenced Diallo to 84 months imprisonment and three years of supervised release after he pled guilty to one count of distribution of a mixture and substance containing fentanyl. D.I. 43. Diallo's "anticipated release date is June 26, 2024." D.I. 52 at 2. On May 27, 2021, Diallo asked the Court for compassionate release because of "chronic strep throat infections" and other medical ailments combined with the risk of COVID-19 infection; the need to test Diallo as a donor match for a kidney for his father and to help his mother care for his siblings; and crowded conditions at Federal Correctional Institution ("FCI") Schuylkill—Diallo's place of incarceration—that he argued facilitated COVID-19's spread. D.I. 46 at 12–16. Diallo argued that he had served approximately half of his projected sentence, learned from his mistakes, and made strides as an individual. D.I. 46 at 18–22. Judge Stark, on July 21, 2021,

1

denied Diallo's motion because Judge Stark found that Diallo had not presented "extraordinary and compelling circumstances that merit modifying his sentence." D.I. 49 at 2. Judge Stark noted that Diallo was vaccinated against COVID-19, that Diallo did not present evidence of chronic strep throat or that the BOP refused a request to test him as a kidney donor, and that Diallo's need to care for his siblings if his father passed away was "speculative" "at this stage[.]" D.I. 49 at 2–4.

On August 15, 2022, Diallo filed another compassionate release request with the warden of FCI Schuylkill. D.I. 50 at 1–2. On August 24, 2022, the warden denied that request. D.I. 50 at 4–5; D.I. 52 at 2. Diallo filed the motion now at issue in November of 2022. D.I. 50 at 1.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), the Court may "modify a term of imprisonment" "upon motion of the defendant" after the defendant has asked the Bureau of Prisons ("BOP") to bring such a motion and either thirty days has elapsed or the defendant has exhausted administrative remedies. Modification of a sentence is appropriate if, (1) "after considering the factors set forth in [18 U.S.C. §] 3553(a)[,]" the Court finds (2) "extraordinary and compelling reasons warrant such a reduction" and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A). However, the Third Circuit has found that the Sentencing Commission's policy statement on compassionate release is persuasive, rather than binding, authority for district courts. *See United States v. Andrews*, 12 F.4th 255, 259–60 (3d Cir. 2021). The applicable policy statement directs courts to also consider (4) whether "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g) . . . ." U.S.S.G. § 1B1.13(2) (last amended Nov. 1, 2018).

The sentencing factors set forth in 18 U.S.C. § 3553(a) are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed [i.e., to reflect the offense's

2

"seriousness," afford "adequate deterrence," "protect the public," and provide "correctional treatment"]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for—(A) the applicable category of offense committed by the applicable category of defendant . . . ; (5) any pertinent policy statement—(A) issued by the Sentencing Commission (B) that . . . is in effect on the date the defendant is sentenced[;] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

### III. DISCUSSION

The Government does not contest that Diallo met his statutory exhaustion requirement. D.I. 52 at 2. However, the Government argues that Diallo fails to show extraordinary and compelling circumstances for release or that the § 3553(a) factors favor release. D.I. 52 at 1, 17. The Court finds, as it did previously, *see* D.I. 43, that Diallo fails to present extraordinary and compelling reasons that would favor a modification of his sentence.

Diallo presents, by the Court's count, five reasons that his circumstances are "extraordinary and compelling." First, the BOP adopted "modified operations" that limit inmate access to programs and recreation. D.I. 50 at 2. Diallo argues that such "onerous conditions of confinement are certainly not what this court anticipated when imposing the 84-month term of imprisonment." *Id.* Second, overcrowding of one or more BOP halfway houses (i.e., residential reentry centers, *see United States v. Gonzalez*, 2021 WL 1088258, at *1 (E.D. Pa. Mar. 22, 2021)) in Delaware will likely limit Diallo's access to such a facility. Third, "Diallo was vaccinated and still contracted [COVID-19]." D.I. 50 at 3. Fourth, Diallo's "father is currently undergoing dialys[i]s and waiting for a kidney" and Diallo "will be the main care taker [sic] of the household when released, as he is the oldest of four." *Id.* Fifth, Diallo has made strides to reduce his risk of recidivism and prepare for reentry into the community with family support. *Id.*

The Court considers the Sentencing Commission's policy statement as persuasive authority for the definition of "extraordinary and compelling." *Andrews*, 12 F.4th at 259–60. The

3

statement's "Application Notes" explain that extraordinary and compelling circumstances include (A) a terminal illness or a permanent "serious physical or medical condition . . . that substantially diminishes" the defendant's ability "to provide self-care"; (B) a "serious deterioration in physical or mental health because of the aging process" in an inmate who is at least age 55; (C) death or incapacitation of "the caregiver of the defendant's minor child or minor children" or spouse; and (D) a catchall of other reasons. U.S.S.G. § 1B1.13, cmt. 1. Further, this Court has found that the ordinary meaning of "'extraordinary'" is "'exceptional to a very marked extent' or 'far from common,'" and that the ordinary meaning of "'compelling'" is "'tending to convince or convert by or as if by forcefulness of evidence.'" *United States v. Helm*, 2022 WL 613689, at *3 (D. Del. Mar. 2, 2022) (quoting dictionary definitions); *see Andrews*, 12 F.4th at 260 (explaining that courts "'look to dictionary definitions to determine the ordinary meaning of a word'" (citation omitted)).

The Court disagrees that Diallo's circumstances, either alone or in combination, rise to the level of extraordinary and compelling. Diallo fails to explain beyond generalities how changes to BOP policy have restricted programs and recreation in FCI Schuylkill or for him, personally. *See* D.I. 50 at 2. Diallo's sentence nowhere mentions a halfway house, D.I. 43, so the unavailability thereof is not an exceptional reason to modify that sentence. Also, Diallo does not suggest that he suffered any complications from his COVID-19 illness. D.I. 50 at 3. That Diallo contracted COVID-19 and survived both grants some near-term immunity against COVID-19 and suggests Diallo is at a lower risk of severe COVID-19 complications in the future.[1] *See United States v. Barksdale*, 2021 WL 5632076, at *1–2 (3d Cir. Dec. 1, 2021) (upholding the district court's finding of no extraordinary and compelling circumstances, which was based in part on the inmate's

---

[1] *See SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*, Ctrs. for Disease Control & Prevention (Oct. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html (discussing "infection-induced immunologic protection").

contraction and recovery from COVID-19); *United States v. Wandell*, 2022 WL 1535276, at *1–2 (3d Cir. May 16, 2022) (upholding as "permissible" the district court's consideration of the inmate's lessened risk of "'serious health consequences'" because the inmate already contracted and recovered from COVID-19 (citation omitted)). Further, Diallo provides no evidence that his siblings are either minor children or without supervision or care—the government argues that they are not, D.I. 52 at 16—and provides no means to verify that he would, in fact, be their caregiver. Many share the experience of a parent's illness,[2] so the illness of Diallo's father is, unfortunately, far from uncommon or rare. Lastly, the Court celebrates Diallo's efforts to prepare himself for successful reentry. However, Diallo provides no evidence or discussion of any specific efforts at self-improvement, *see* D.I. 50 at 3 ("He has been programming as much as possible . . . ."), and, thus, the Court cannot determine if Diallo's efforts are either uncommon or persuasive.

### IV. CONCLUSION

Thus, for the reasons above, the Court finds that Diallo fails to offer extraordinary and compelling reasons for compassionate release. The Court need not, and does not, consider whether Diallo meets the other requirements for compassionate release.

Therefore, at Wilmington this 10th day of February 2023, **IT IS HEREBY ORDERED** that Diallo's motion for a reduction of sentence via compassionate release under 18 U.S.C. § 3582(c)(1)(A) (D.I. 50) is **DENIED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[2] *See Unpaid Eldercare in the United States--2017-2018 Summary*, Bureau of Lab. Stats. (Nov. 22, 2019), https://www.bls.gov/news.release/elcare.nr0.htm (finding that "40.4 million people provide[d] unpaid eldercare" in the United States each day, on average, from 2017 to 2018).